**Affirmed and Memorandum Opinion filed March 10, 2020.**



**In The**

# Fourteenth Court of Appeals

**NO. 14-18-00688-CV**

**BRANDON GARDNER, Appellant**

**V.**

**TEXAS DISPOSAL SYSTEMS, INC., Appellee**

**On Appeal from the 419th District Court
Travis County, Texas
Trial Court Cause No. D-1-GN-16-003247**

## M E M O R A N D U M   O P I N I O N

Brandon Gardner appeals the judgment which, in accordance with the jury's verdict, awarded him $1.1 million for the wrongful death of his daughter Bre'in Gardner. According to Brandon,[1] the trial court reversibly erred in excluding evidence that Bre'in's mother, co-plaintiff Leah Bullock, was biased against him because (a) she received a large settlement from the defendant, and (b) she had

---

[1] Because they share a family name, we refer to Bre'in and Brandon by their given names.

unrequited romantic feelings for Brandon. Because Brandon did not preserve these alleged errors for review, we overrule the sole issue presented and we affirm the trial court's judgment.

## I. Background

Carl Weige, an employee of Texas Disposal Systems, Inc. ("TDS"), negligently drove a TDS truck with the truck's hoist or "boom" elevated. The boom struck a bridge, which collapsed onto Leah Bullock's car, injuring her and killing her twelve-year-old daughter Bre'in Gardner, who was a passenger in the vehicle. Bullock's two other minor children were uninjured bystanders to the accident.

Bre'in's father Brandon sued TDS to recover damages as a statutory wrongful-death beneficiary. Bullock, acting individually, as next friend of her surviving minor children, and as representative of Bre'in's estate, sued TDS and Weige in a separate suit that was consolidated into Brandon's suit. After Bullock settled and then nonsuited her claims in all of her capacities, TDS stipulated to its liability to Brandon.

The case proceeded to a jury trial solely on the issue of Brandon's compensatory damages. The jury assessed damages totaling $1.1 million for Brandon's past and future mental anguish and for his past and future loss of Bre'in's companionship and society. The trial court rendered judgment on the verdict and denied Brandon's motion for new trial.

On appeal, Brandon asks that we reverse the judgment and remand the case. According to Brandon, the trial court reversibly erred in excluding (a) evidence of the total amount for which Bullock settled all of the claims she asserted, and (b) evidence that Bullock had "unrequited romantic feelings" for Brandon.

2

## II. ANALYSIS

With rare exceptions inapplicable here, for a party to present a complaint to the appellate court for review, the record must show that (1) the complaint was presented to the trial court by a timely request, objection, or motion, complying with the Texas Rules of Evidence or the Texas Rules of Civil or Appellate Procedure; and (2) either the trial court ruled on the request, objection, or motion, or the complaining party objected to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a). To preserve a complaint that the trial court erroneously excluded evidence, the error must affect a substantial right of the complaining party, who must inform the court of the evidence's substance by an offer of proof, unless the substance was apparent from the context. TEX. R. EVID. P. 103(a)(2).

For the reasons discussed below, we conclude that Brandon failed to preserve complaints that the trial court erroneously excluded evidence of the amount for which TDS settled Bullock's claims and of Bullock's allegedly unrequited romantic interest in Brandon.[2]

### A.    Excluded Evidence of Leah Bullock's Settlement Amount

In its pre-trial motion in limine, TDS asked the trial court to order all attorneys and witnesses not to attempt to convey certain matters to the jury "without first obtaining permission of the Court outside the presence and hearing of the jury." Among other requests, TDS asked the trial court to order litigants to obtain the court's permission outside the jury's presence before referring to, or offering evidence of, the amount of Bullock's settlement. TDS argued in its motion that the amount of the settlement (a) is the subject of a confidentiality agreement; and (b) is

---

[2] Because the case was transferred to us from the Third Court of Appeals in Austin, we apply that court's precedent to the extent of any conflict with our own precedent. *See* TEX. R. APP. P. 41.3.

irrelevant, or if relevant, the danger of confusing the issues or misleading the jury substantially outweighs the probative value of such evidence.[3]

Brandon responded that the amount of Bullock's settlement "goes directly to the weight and credibility of her testimony and her bias." Brandon also asserted, "The Court is well aware how much money she got. . . . She got well over [x] dollars.[4] The Court knows this."

The trial court granted the part of TDS's motion in limine concerning references to the amount of TDS's settlement with Bullock. Brandon did not attempt to introduce evidence of the settlement amount during the trial, and he did not make an offer of proof of such evidence.

The ruling on the motion in limine did not preserve error. A motion in limine's purpose "'is to prevent the asking of prejudicial questions and the making of prejudicial statements in the presence of the jury' without seeking the trial court's permission." *Wackenhut Corp. v. Gutierrez*, 453 S.W.3d 917, 920 n.3 (Tex. 2015) (per curiam) (quoting *Hartford Accident & Indem. Co. v. McCardell*, 369 S.W.2d 331, 335 (Tex. 1963)). Because a motion in limine "does not seek a ruling on admissibility," it does not preserve error for appellate review. *Id.* Although the trial court can render a pretrial order excluding evidence, the order on TDS's motion in limine did not do so. Instead, the order specifically states, "It is ORDERED that all attorneys and all witnesses not mention, refer to, or attempt to convey to the jury in any manner, either directly or indirectly, any of the below matters without first obtaining permission of the Court outside the presence and hearing of the jury."

---

[3] *See* TEX. R. EVID. 403.

[4] The number stated is said to be the subject of a confidentiality agreement, and in any event, the number is immaterial to the question of whether error was preserved.

4

Brandon therefore was required to follow the usual process to preserve a complaint that the trial court erroneously excluded evidence. A complaining party generally must (1) attempt to introduce the evidence during the evidentiary portion of the trial, (2) respond to any objections by identifying the purpose for which the evidence is offered and explaining why the evidence is admissible for that purpose, (3) obtain an adverse ruling from the trial court, and (4) "make a record of the precise evidence the party desires admitted." *Tex. Prop. & Cas. Guar. Ass'n v. Nat'l Am. Ins. Co.*, 208 S.W.3d 523, 546 (Tex. App.—Austin 2006, pet. denied); *see also In re N.R.C.*, 94 S.W.3d 799, 806 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) ("[A]n offer of proof must show the nature of the evidence specifically enough so that the reviewing court can determine its admissibility."). Brandon did not attempt to introduce evidence of the settlement amount during trial, obtain an adverse ruling, or make a record of the specific evidence he wanted admitted.

## B. Excluded Evidence of Unrequited Romantic Interest

Regarding Bullock's allegedly unrequited romantic interest in Brandon, the only evidence Brandon cites is drawn from Bullock's post-settlement deposition. Bullock did not testify live at trial, and both sides designated excerpts from the deposition to be played for the jury. But, based on the trial court's ruling on the motion in limine, Brandon's counsel Christopher Leavitt withdrew from his offer the portions of Bullock's deposition pertaining to her alleged interest in Brandon:

> MR. LEAVITT: *My understanding is that the motion in limine indicated the relationship between Brandon and Leah, uh, we should avoid talking about that. To the extent -- and based on that, I have just, wholesale, tried to remove as much of it as I could.* There are still some things that they [TDS's attorneys] think are relevant. I'll allow them to explain it to the Court. *Now, I have taken out everything with the anticipation that that's how the Court is going to rule.*

5

In the event that the Court does let some of this in, we have identified and it's probably four discrete excerpts that we think we should be able to bring up in our counter.

THE COURT: Let's -- let's begin, first, with -- direct me to the Plaintiff's motion in limine that discussed the relationship between Ms. Bullock and the plaintiff.

MR. LEAVITT: Uh...

THE COURT: I see a couple related to Ms. Bullock.

MR. LEAVITT: Yeah, and I don't have that -- if -- I don't know. I don't have the motion in limine in front of me judge, but it was more of -- some direction from the court, um, that as it relates to the children, um, it's fine, and I believe they may even have the transcript. To the extent it doesn't involve the children, not--

THE COURT: Not *going to be* relevant.

MR. LEAVITT: Not fine.

THE COURT: *Just -- I gave you some guidance about where I will likely come out and I will rule on relevance.*

MR. LEAVITT: This is what you're about to hear a lot of testimony and text messages that, um, you know, I -- I -- I love you. I -- you know, etcetera, etcetera, those kind of things. They get into their personal relationship which *we have withdrawn our cuts from based on the Court's ruling and court's direction.* Some of that they are still interested in putting in, to the extent the Court lets them in, I may have to come back and say, Judge, based on that, we do need to show bias and we've identified three or four very short, um, discrete excerpts on that.

THE COURT: Okay.[5]

---

[5] Emphasis added. Statements in the future tense such as whether evidence is "going to" be relevant or how the trial court "will likely come out" or "will rule" are not themselves rulings. *See Mem'l Hermann Health Sys. v. Heinzen*, 584 S.W.3d 902, 908–09 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

The parties then conferred, and neither side offered into evidence any of the deposition excerpts that Brandon characterizes on appeal as erroneously excluded.[6] Thus, there is nothing for us to review.

### III. CONCLUSION

Because Brandon did not preserve the evidentiary complaints raised on appeal, we overrule the sole issue presented and we affirm the trial court's judgment.

/s/ Tracy Christopher
   Justice

Panel consists of Chief Justice Frost and Justices Christopher and Bourliot.

---

[6] For the parties' reference, the deposition testimony that Brandon characterizes as excluded evidence, and the corresponding pages in the reporter's record showing the withdrawal of the offer, are as follows: (a) the excerpt from deposition page 82 was withdrawn at 6 RR 217–18; (b) the excerpt from deposition page 93 was withdrawn at 6 RR 224; (c) the excerpt from deposition page 104 was withdrawn at 6 RR 238; (d) the excerpts from deposition pages 108, 112, and 113 were withdrawn at 6 RR 239; (e) the excerpt from deposition pages 118, 122, and 123 were withdrawn at 6 RR 240; and (f) the excerpt from deposition page 129 was withdrawn at 6 RR 243–44.