**REVERSE and REMAND and Opinion Filed May 24, 2024**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-23-00123-CV

**COPPER CREEK DISTRIBUTORS, INC. AND JOSE DONICETH ESCOFFIE, Appellants**
**V.**
**RON VALK D/B/A PLATINUM CONSTRUCTION, Appellee**

**On Appeal from the 439th Judicial District Court**
**Rockwall County, Texas**
**Trial Court Cause No. 1-18-0096**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Nowell, and Smith
Opinion by Justice Nowell

Ron Valk d/b/a Platinum Construction sued Copper Creek Distributors, Inc. (CCDI) and Jose Doniceth Escoffie for theft, tortious interference with existing contractual relationships, and unjust enrichment; Platinum also alleged Escoffie is the alter ego of CCDI. The case proceeded to a jury trial, the jury returned a verdict favorable to Platinum, and the trial court entered a final judgment accordingly. Appellants raise eleven issues on appeal, but we need only consider their fifth issue: whether the trial court erred by instructing the jury on spoliation of evidence. We conclude the trial court abused its discretion by instructing the jury on spoliation and

the instruction probably caused the rendition of an improper judgment. We reverse the trial court's judgment as to CCDI and Escoffie and remand the cause to the trial court for further proceedings.

FACTUAL BACKGROUND

Ron Valk owns Platinum Construction, a commercial construction company that primarily constructs self-storage centers. Ron's son, Shawn Valk, oversees Platinum's day-to-day operations.

Shawn was friends with Doni Escoffie and his husband, Don Triplett.[1] In early 2017, Triplett approached Ron about buying cabinetry and granite countertops for Platinum's commercial construction projects from Copper Creek Fine Cabinetry; Triplett did not disclose that Copper Creek Fine Cabinetry was his business. Ron thought the pricing was favorable and used the vendor in 2017. Copper Creek Fine Cabinetry used the domain coppercreekcabinetry.net.

On July 27, 2017, Triplett incorporated CCDI. The initial CCDI directors were Triplett, Escoffie, and Daryl Briggs.[2] Escoffie, who had no business experience, intended to use CCDI as a vehicle to learn how to run a business, with Triplett instructing him. However, throughout 2017, Triplett operated CCDI and handled all day-to-day management. Two assumed name certificates for CCDI were

---

[1] Originally, Triplett was the sole defendant in this case. After he filed bankruptcy, he was non-suited from the litigation.

[2] Briggs was a defendant in the trial court and judgment was entered against him. However, he is not a party to this appeal.

filed on August 4, 2017. The certificates state the business of CCDI would be conducted under the names Copper Creek Fine Cabinetry and Copper Creek Windows, Flooring, & More.

In 2017, Platinum was building self-storage centers at two locations, which the parties call Maple Avenue and Locust Grove. Platinum hired Triplett to be the superintendent on both projects, and he was responsible for managing the people working on the job sites. In September 2017, Shawn discovered that Triplett was diverting Platinum's workers[3] from the Maple Avenue and Locust Grove project sites to his own residential construction projects. Triplett would arrange for the workers' timecards to reflect they were working at Platinum's job sites even though they were working at Triplett's residential construction sites. Briggs oversaw some of these residential projects for Triplett.

In late October 2017, Ron and Shawn met with Triplett to talk about Triplett diverting workers to his residential projects. Ron testified that Triplett admitted he was taking workers from Platinum's job sites to work on his own projects. Ron and Shawn terminated Triplett during the meeting. Ron and Shawn believed Triplett's projects benefited CCDI.

The jury found CCDI and Briggs committed theft of services, intentionally interfered with the contract between Platinum and its contractors, and were unjustly

---

[3] The record is not clear whether the workers were employees or contractors.

enriched by the use of Platinum's services and awarded damages. Finally, the jury found Escoffie was responsible for the conduct of CCDI. The trial court entered judgment in accordance with the jury's verdict.

Appellants argue the trial court erred by giving a spoliation instruction to the jury. The trial court instructed the jury as follows:

**II. <u>SPOLIATION INSTRUCTION</u>**

Copper Creek Distributors, Inc. destroyed or failed to preserve evidence in this lawsuit, including accounting books and records and e-mails related to Copper Creek Distributors, Inc. You may consider that this evidence would have been unfavorable to Copper Creek Distributors, Inc. on the issue of theft of services, tortious interference with existing contractual relationship, unjust enrichment and/or alter-ego.

Platinum responds that the spoliation instruction was appropriate because CCDI failed to produce all of its QuickBooks files and also did not produce any emails in response to Platinum's requests for production.

### A.     Standard of Review

We review a trial court's imposition of sanctions for spoliation for an abuse of discretion. *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 27 (Tex. 2014). A spoliation jury instruction is a "severe spoliation sanction" that can shift the focus of the case from the merits to improper conduct allegedly committed by one party during the litigation. *Id*. at 13.

A spoliation analysis involves a two-step judicial process: (1) the trial court must determine, as a question of law, whether a party spoliated evidence, and (2) if

–4–

spoliation occurred, the trial court must assess an appropriate remedy. *Id.* at 14. To conclude that a party spoliated evidence, the court must find that (1) the spoliating party had a duty to reasonably preserve evidence, and (2) the party intentionally or negligently breached that duty by failing to do so. *Id*. The party alleging spoliation has the burden of establishing that the nonproducing party had a duty to preserve material and relevant evidence and breached that duty either negligently or intentionally. *See id*. at 20.

On finding that spoliation occurred, the trial court must exercise its discretion to impose an appropriate sanction, considering the spoliating party's culpability and the prejudice to the nonspoliating party. *Id*. at 21; *see also Petroleum Sols., Inc. v. Head*, 454 S.W.3d 482, 488–89 (Tex. 2014). As with any discovery sanction, the sanction must be proportionate; it must relate directly to the conduct giving rise to the sanction and must not be excessive. *Brookshire Bros*., 438 S.W.3d at 14. While a trial court's discretion to remedy an act of spoliation is broad, it is not limitless. *Petroleum Sols*., 454 S.W.3d at 489. The trial court must consider the availability of lesser sanctions and, "in all but the most exceptional cases, actually test the lesser sanctions." *Id*. (quoting *Cire v. Cummings*, 134 S.W.3d 835, 841 (Tex. 2004)).

## B.     Facts Relevant to Spoliation

On January 26, 2018, Platinum sued Triplett individually and alleged he used Platinum's labor force without authorization. Approximately sixteen months later, Platinum filed its first amended petition and added several defendants, including

–5–

DFW Design & Remodeling, Triplett d/b/a Preferred Platinum Construction, CCDI, and Escoffie. In its amended petition, Platinum alleged that DFW Design & Remodeling and Triplett individually and d/b/a Preferred Platinum Construction and d/b/a CCDI contracted to oversee its construction projects while instead working on their own projects. Escoffie was not served with the lawsuit until late 2020. Triplett filed a voluntary bankruptcy petition on September 19, 2019. Platinum subsequently filed a notice of nonsuit as to eighteen parties, including Triplett, DFW Design & Remodeling, and Triplett d/b/a Preferred Platinum Construction. CCDI and Escoffie remained defendants.

In January 2021, Platinum filed a motion to compel and a motion for sanctions seeking to force Escoffie to appear for a deposition and to respond to discovery; Platinum asked the trial court to require Escoffie and CCDI to pay their attorney's fees and costs for abusing the discovery process. A few months later, in May 2021, Platinum filed a motion for sanctions alleging Escoffie made false statements and committed perjury when he testified in his deposition that he never used and did not recognize the email address doni@coppercreekcabinetry.net and a similar email address for his sister. The motion states: "Doni, as the owner of the assumed name Copper Creek Cabinetry, repeatedly asserted under oath that he was unaware of any email addresses associated with the domain, coppercreekcabinetry.net. Despite Doni's numerous denials, there is ample evidence of the existence of email addresses associated with Copper Creek Cabinetry and the domain coppercreekcabinetry.net,

including email addresses listed in his name, the name of his husband, and the name of his sister." The next day, Platinum filed an amended motion for sanctions and perjury containing similar allegations.

Escoffie responded and argued that Platinum could not show he provided any false testimony in his deposition; "Plaintiff's disbelief and indignation that Escoffie does not recognize or remember emails with the domain name . . . does not render such testimony untrue." Escoffie asserted he lacked knowledge because he was inexperienced, was learning the business, and relied on other company directors to operate CCDI.

On June 29, 2021, Platinum filed a motion to compel against Escoffie and CCDI and requested sanctions. Platinum's motion stated it requested documents (including emails) from Escoffie and CCDI, but they failed to produce emails. Platinum stated it had knowledge the emails existed because Platinum obtained them from another source; Platinum again complained about Escoffie denying knowledge of the coppercreekcabinetry.net domain. Platinum requested Escoffie be compelled to produce all documents (including emails) and requested sanctions for the cost of preparing and arguing the motion.

On April 22, 2022, Platinum filed its third amended petition, which lists the defendants as: CCDI d/b/a Copper Creek Restoration and Construction, Escoffie, Briggs, and Gary Wilkerson.[4]

On July 6, 2022, Platinum filed a supplement to its amended motion for sanctions and discussed the emails about which Escoffie denied having knowledge. The supplement stated that Platinum subpoenaed GoDaddy.com, LLC, and the GoDaddy records showed Escoffie owned the domain coppercreekcabinetry.net and the email doni@coppercreekcabinetry.net. Further, the GoDaddy records showed the doni@coppercreekcabinetry.net email was created in February 2017 and last modified on March 10, 2018, shortly after the lawsuit was filed against Triplett. In their response, CCDI and Escoffie maintained Triplett set up the domain and controlled the emails.

On August 1, 2022, the trial court held a hearing on Platinum's motion for sanctions and Escoffie's alleged perjury. Escoffie testified at the hearing. Escoffie became an owner of CCDI when it was incorporated in July 2017. While Escoffie wanted to learn how to operate a business, Triplett actually ran the business in 2017. Escoffie testified: "At the time, when they were forming the company, my husband was helping me with all the decisions." From July through December 2017, Triplett "pretty much helped me with everything, filing paperwork, because I didn't know

---

[4] Wilkerson was non-suited before trial.

much about involving [sic] or filling the paperwork and everything because I was learning. And I wanted to do something on my own, and he wanted to teach me."

Escoffie maintained he did not use an email address in 2017 and did not have knowledge of the domain coppercreekcabinetry.net. Rather, he explained that Triplett "is the one that set up all the emails, and to the best of my knowledge, I didn't have - - I didn't have in 2017 an email. If I did it wasn't - - I didn't know." He testified that he never received or sent emails from doni@coppercreekcabinetry, and he learned emails had been sent to doni@coppercreekcabinetry.net during his deposition in this litigation.

Triplett also testified at the August 2022 hearing and stated he set up the email address doni@coppercreekcabinetry.net, but he did not tell Escoffie about it; Triplett used doni@coppercreekcabinetry.net to send emails on Escoffie's behalf.

No testimony was elicited about accounting books and records, including QuickBooks, at the August 2022 hearing.

At the end of the hearing, the judge took the matter under advisement. The appellate record does not include an order on Platinum's requests for sanctions.

On August 15, 2022, Platinum filed a motion requesting a spoliation jury instruction because CCDI and Escoffie spoliated evidence. The motion recited Platinum's efforts to obtain emails and QuickBooks files from Escoffie and reflected Platinum's disbelief that Escoffie lacked knowledge of both. In the motion, Platinum stated the emails and QuickBooks files had not been produced, and Escoffie and

–9–

Triplett asserted they no longer existed. Therefore, Platinum argued, "[i]f such documents no longer exist, then there can only be one answer to the question of what happened to them — they were **destroyed** in anticipation of litigation."

A transcript from Escoffie's November 12, 2021 deposition was an exhibit to the motion. Escoffie testified in his deposition that he was responsible for responding to discovery requests on behalf of CCDI, but he had very few documents and provided all documents he had, including emails. Escoffie was asked whether, as owner of CCDI, he recorded checks that he wrote, and Escoffie testified he did not remember or did not know. When asked whether he could describe his accounting practices in 2017, he replied he could not because he did not remember. Escoffie speculated he used QuickBooks online in 2017 to manage his books and records; but at the time of the deposition, he did not have access to QuickBooks online because "I closed it out." He testified he had not tried to log into QuickBooks and he had not called QuickBooks to attempt to access his books and records. He stated he would work with his attorney to determine whether he had access to QuickBooks.

Documents from GoDaddy were also attached as an exhibit. The records showed the email address doni@coppercreekcabinetry.net was created on February 23, 2017, it was last modified on March 10, 2018, and it had been deleted at the time GoDaddy responded to the subpoena on April 19, 2022. In response, on September 14, 2022, CCDI filed a motion for protection stating, among other things, that

Platinum failed to provide any evidence CCDI destroyed any emails or QuickBooks files.

Two days later, the trial court held a hearing. Triplett, acting as the CCDI corporate representative, was the only testifying witness. Triplett explained he created emails for himself (don@coppercreekcabinetry.net), Escoffie (doni@coppercreekcabinetry.net), and others in the same domain in 2017. At the time of the hearing, Triplett no longer had access to the emails because he let the domain lapse when it was not being used; however, as part of the litigation, he attempted to log in and obtain the emails from 2017. Triplett testified the emails associated with the domain coppercreekcabinetry.net did not belong to CCDI.

As to QuickBooks, Triplett was asked whether he was designated as the corporate representative to answer questions about why QuickBooks records were not produced, and Triplett replied he did not think QuickBooks was the purpose of his testimony. No other testimony about QuickBooks was elicited. However, one of the exhibits admitted during the hearing was the transcript from Escoffie's deposition wherein Escoffie testified CCDI migrated from using the online version of QuickBooks to the desktop version.

At the end of the September hearing, the trial court judge stated he was inclined to give a spoliation instruction, but he would defer the determination of the exact nature of the instruction until trial. At a pre-trial hearing on November 28,

2022, the judge affirmatively stated a spoliation instruction was proper, but "the nature of the instruction . . . remains to be seen still." Trial began the next day.

### C. Analysis

Before giving a spoliation instruction, the trial court must determine, as a question of law, whether a party spoliated evidence. *See Brookshire Bros*., 438 S.W.3d at 14. To conclude a party spoliated evidence, the court must find that (1) the spoliating party had a duty to reasonably preserve evidence, and (2) the party intentionally or negligently breached that duty by failing to do so. *Id*.; *see also Petroleum Sols*., 454 S.W.3d at 488. For purposes of our analysis, we will assume without deciding that CCDI had a duty to reasonably preserve evidence when Platinum filed the lawsuit against Triplett.

#### 1. Breach of Duty to Preserve

We begin, then, by considering whether the evidence shows CCDI intentionally or negligently breached its preservation duty. Platinum complains CCDI did not produce emails from the coppercreekcabinetry.net domain or QuickBooks records.

Platinum began using Copper Creek Fine Cabinetry as a vendor in 2017, and Platinum received emails from Copper Creek Fine Cabinetry, which was using the domain coppercreekcabinetry.net. Although Triplett maintained that domain belonged to him and not CCDI, Escoffie, the owner of CCDI, owned the domain and Copper Creek Fine Cabinetry continued using it after CCDI filed the assumed name

–12–

certificate in August 2017. For example, on September 21, 2017, Ashley Gibbs sent an email from ashley@coppercreekcabinetry.net to Ron Valk and provided "copies of all previous invoices for orders placed since February of this year," which would include invoices sent before CCDI was incorporated. Gibbs's signature block states:

ASHLEY GIBBS
ORDER PROCESSING
COPPER CREEK DISTRIBUTORS, INC.
COPPER CREEK CABINETRY
CHIC CABINETRY

With the evidence in the record, the trial court could have determined CCDI owned the domain coppercreekcabinetry.net and it was required to produce documents, including emails, associated with the domain, but CCDI failed to do so.

Escoffie maintained he lacked knowledge of the domain, and Platinum presented no contrary evidence. Escoffie, thus, did not negligently or intentionally spoliate the emails.

Triplett, who testified as the CCDI corporate representative, had knowledge of the domain and associated emails. Triplett explained he no longer had access to the coppercreekcabinetry.net domain because he allowed the domain to lapse due to disuse. If the trial court believed Triplett's explanation, then it could have concluded Triplett negligently spoliated the emails; if it did not, then it could have concluded Triplett intentionally did not maintain the domain after the lawsuit was filed and, thus, intentionally spoliated the emails. Based on the evidence in the record, the trial

–13–

court did not abuse its discretion by concluding Platinum met its burden to show CCDI intentionally or negligently breached its duty to preserve evidence.

Triplett provided no evidence about CCDI's accounting books and records. Escoffie speculated during his deposition that he used QuickBooks online in 2017 to manage CCDI's books and records, but he no longer had access to QuickBooks online at the time of his deposition because "I closed it out." The record does not show when Escoffie "closed out" the online version of QuickBooks and whether he did so before or after Platinum filed the lawsuit. Escoffie also testified that CCDI switched from the online version of QuickBooks to the desktop version; no date for this transition was requested or provided. Escoffie's testimony is some evidence that CCDI used QuickBooks to manage its accounting functions, and CCDI migrated from the online version of QuickBooks to the Desktop version.

However, there is no evidence CCDI intentionally or negligently failed to preserve the QuickBooks data. In his deposition, Escoffie testified he had not attempted to log into QuickBooks and he had not called QuickBooks to attempt to access his books and records. He stated he would work with his attorney to determine whether he had access to QuickBooks — the record does not show whether this happened and, if it did, whether any documents or data were recovered. Considering the failure to provide any evidence about when CCDI "closed out" its online QuickBooks account and when CCDI migrated from the online platform to the desktop platform along with the lack of evidence about whether Escoffie searched

for QuickBooks records and recovered any, the trial court abused its discretion by concluding Platinum met its burden to show CCDI intentionally or negligently breached its duty to preserve accounting books and records, including QuickBooks files. Accordingly, we conclude the trial court erred by instructing the jury that CCDI destroyed or failed to preserve accounting books and records, and the jury could consider that evidence would have been unfavorable to CCDI.

### 2. Appropriate Remedy

Even if the evidence showed CCDI intentionally or negligently breached its duty to preserve evidence, the trial court was then required to consider the availability of lesser sanctions and, "in all but the most exceptional cases, actually test the lesser sanctions." *Petroleum Sols.*, 454 S.W.3d at 489 (quoting *Cire*, 134 S.W.3d at 841). The trial court does not need to test the effectiveness of all available lesser sanctions by actually imposing them before but must "analyze the available sanctions and offer a reasoned explanation as to the appropriateness of the sanction imposed." *Cire*, 134 S.W.3d at 840.

The record does not show the trial court considered any lesser sanction, does not include a reasoned explanation as to the appropriateness of the sanction imposed, and does not show this is an "exceptional" case where the trial court should not have been required to test a lesser sanction. For this independent reason, we conclude the trial court abused its discretion by giving a spoliation instruction to the jury.

### 3. Reversible Error

The trial court's error is reversible only if it probably caused the rendition of an improper judgment. *Wackenhut Corp. v. Gutierrez*, 453 S.W.3d 917, 921 (Tex. 2015). When a spoliation instruction should not have been given, "the likelihood of harm from the erroneous instruction is substantial, particularly when the case is closely contested." *Id.* at 921-22. "The problem is magnified when evidence regarding the spoliating conduct is presented to a jury." *Brookshire Bros*, 438 S.W.3d at 13, 17. Presenting spoliating conduct to the jury can unfairly skew a jury's verdict, resulting in a judgment that is based on the conduct of the parties during or in anticipation of litigation rather than the facts of the case. *See id*. at 13–14. "[E]vidence bearing directly upon whether a party has spoliated evidence is not to be presented to the jury except insofar as it relates to the substance of the lawsuit." *Id*. at 14.

In this case, Platinum called Escoffie as a witness at trial and asked him about the GoDaddy records showing the email doni@coppercreekcabinetry.net was created on February 23, 2017, last modified on March 10, 2018, and subsequently deleted. He was also asked about other email addresses in the coppercreekcabinetry.net domain that were deleted after the lawsuit was filed. As to QuickBooks, Escoffie testified that he initially had a subscription to an online version, but eventually "we stopped paying [for QuickBooks] and it closed." Escoffie did not know what happened to the QuickBooks records when he stopped paying for the service. He

was asked whether he tried to access QuickBooks as part of the lawsuit to obtain accounting records, and he testified he had done so and not found any. Instead, he, on behalf of CCDI, produced sixteen pages of financial documents, which he maintained were all of the accounting-related documents for the relevant time period.

Platinum also called Triplett to testify as CCDI's corporate representative. Triplett was asked about the GoDaddy records showing deleted email addresses. As to QuickBooks, he testified CCDI was using QuickBooks at the time of incorporation, all of the documents from QuickBooks were converted to the desktop version of QuickBooks, and those records were provided in discovery.

Escoffie's and Triplett's testimony about the coppercreekcabinetry.net domain and QuickBooks did not relate to the substance of the lawsuit.

In addition to soliciting testimony at trial, Platinum discussed the allegedly destroyed documents and spoliation instruction during opening statement and closing argument. During opening, Platinum's counsel told the jury:

> We shut down that scheme in October. So how much labor was lost? Well, we don't know the exact amount, and we don't know the exact amount for a couple of reasons.
> First and foremost, as I said, you've got Copper Creek that's really the shell company for their personal benefit. The other reason is that the e-mail accounts for Copper Creek were all shut down and deleted, so we don't have access to those e-mails. We can't find the e-mails between all the - - anything internally. We have some of the accounting emails that were sent to us for the invoices, but we don't have anything else. Those records have been destroyed.
> . . .

. . . They will also admit that they were using QuickBooks to run all their accounting practices, but there are no QuickBook accounts.

There is no QuickBooks data that has been produced or provided because that's gone too. So if we don't have e-mails and we don't have financials, it's kind of hard to piece together what was going on with Copper Creek and everything else involved in that.

In closing, Platinum's counsel stated:

So what I want to do is I want to walk through the jury instructions with you guys real quick to try to help you out because, even for lawyers this stuff is confusing.

The first and most important thing was a spoliation instruction that the Judge read to you. You are - - the instruction was that Copper Creek destroyed or failed to preserve evidence in this lawsuit including its accounting books and records and e-mails related to Copper Creek.

You may consider that this evidence would have been unfavorable. If it wouldn't have been unfavorable, you'd think it would have been preserved or produced, but it wasn't. That's those missing pieces in that puzzle picture that we're talking about.

Platinum's lawyer told the jury that CCDI and Escoffie "hotly contest[ed]" the damages evidence provided by Platinum. He continued: "But again, because we don't have the evidence of all the e-mails and accounting records, we've had to piece together on our end. So what were those numbers?" Counsel told the jury that "we're basically guestimating that they [the workers] were gone [from the job sites], because we don't know the extent of stolen labor."

Whether Triplett diverted labor from Platinum for CCDI's benefit was hotly contested as was the extent, if any, of control that Escoffie exercised over CCDI and the damages, if any, that Platinum sustained. The jury heard spoliation-related testimony, and Platinum discussed the allegedly deleted documents and spoliation

–18–

instruction in its opening statement and closing argument. Given the evidence in the case, including the spoliation-related evidence, and the arguments of counsel about spoliation, we conclude the trial court's error in giving the spoliation instruction probably caused the rendition of an improper judgment.

We sustain appellants' fifth issue.

## CONCLUSION

As a general matter, when multiple grounds for reversal of a trial court's judgment are presented, courts of appeals should first address issues that would require rendition and consider those issues before ordering a remand. *See FieldTurf USA, Inc. v. Pleasant Grove Indep. Sch. Dist.*, 642 S.W.3d 829, 836 (Tex. 2022). "However, even when rendition would otherwise be warranted, our rules of appellate procedure allow discretion for a remand when 'the interests of justice require' it." *Id.* (quoting TEX. R. APP. P. 43.3(b)). "Appellate courts have broad discretion to remand a case for a new trial in the interest of justice." *In re D.C.*, No. 05-22-01223-CV, 2023 WL 3243483, at *5 (Tex. App.—Dallas May 4, 2023, no pet.) (mem. op.) (quoting *In re H.H.*, No. 05-15-01322-CV, 2016 WL 556131, at *3 (Tex. App.—Dallas Feb. 12, 2016, no pet.) (mem. op.)). One circumstance meriting a remand in the interest of justice is when the trial court's error prevented full development and presentation of the evidence. *See FieldTurf USA, Inc. v. Pleasant Grove Indep. Sch. Dist.*, 642 S.W.3d 829, 836 (Tex. 2022). A remand on that ground must be supported by the record. *See id.*

–19–

Before trial began, the trial court announced it would instruct the jury that CCDI spoliated evidence. We have concluded that ruling was in error. As acknowledged by Platinum's counsel in its closing argument, Platinum used the spoliation instruction to fill the "missing pieces in that puzzle picture." Knowing it would be receiving the substantial benefit of the spoliation instruction, Platinum appears to have relied on the spoliation instruction when determining which evidence to present to the jury, and it may have presented less evidence than it otherwise would have without the trial court's error. Accordingly, based on this record, we conclude that a re-trial of Platinum's claims, and any defenses to those claims, would be in the interest of justice, and we choose to exercise our broad discretion to remand this case for further proceedings.

In light of our resolution of appellants' fifth issue, we do not address appellants' first through fourth and sixth through eleventh issues. *See* TEX. R. APP. P. 47.1.

We reverse the trial court's judgment against Copper Creek Distributors, Inc. and Jose Doniceth Escoffie, and we remand the cause to the trial court for further proceedings.

/Erin A. Nowell/

ERIN A. NOWELL

230123F.P05

JUSTICE

–20–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

COPPER CREEK DISTRIBUTORS, INC. AND JOSE DONICETH ESCOFFIE, Appellant

No. 05-23-00123-CV          V.

RON VALK D/B/A PLATINUM CONSTRUCTION, Appellee

On Appeal from the 439th Judicial District Court, Rockwall County, Texas
Trial Court Cause No. 1-18-0096.
Opinion delivered by Justice Nowell. Justices Partida-Kipness and Smith participating.

In accordance with this Court's opinion of this date, we **REVERSE** the trial court's judgment against Copper Creek Distributors, Inc. and Jose Doniceth Escoffie. This cause is **REMANDED** to the trial court for a new trial.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered May 24, 2024.